UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 03-40267-DPW

| | |
|---|---|
| JOHN G. LINDENBERG,<br>      Petitioner<br><br>v.<br><br>PAUL VERDINI, Superintendent,<br>MCI, Shirley,<br>      Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONER'S MEMORANDUM IN SUPPORT OF
HIS MOTION FOR LEAVE TO CONDUCT DISCOVERY**

**INTRODUCTION**

The petitioner's habeas corpus petition states five (5) grounds for relief. The petitioner seeks leave to request the production of documents in the exclusive control of the prosecution relevant to his claim that the Commonwealth of Massachusetts denied him an opportunity for full and fair litigation of his claim that probable cause to arrest him was lacking at the time of his de facto arrest. The documents the petitioner is seeking are exculpatory evidence which the prosecution failed to disclose, in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

**FACTUAL BACKGROUND**

When the petitioner's direct appeal from his conviction was filed in the state court, a central issue was whether a search of him, wherein his pants and shoes were removed and his underwear was searched, could be upheld as a protective pat frisk. The petitioner's brief on appeal made no significant argument in regard to the question of probable cause to arrest him at the time of this search because, as his brief correctly noted, the Commonwealth had conceded in

the trial court that probable cause to arrest him did not exist at that time. Prior to his trial, the petitioner moved to suppress incriminating statements and physical evidence, in part on the ground that the strip search of his person was not incident to a lawful arrest. At the suppression hearing, the Commonwealth immediately agreed that probable cause to arrest the petitioner did not exist at the time of the search, thereby removing the issue of probable cause to arrest as a live issue, and defended the search as a protective pat frisk. In fact, the Commonwealth used the testimony of a number of police officers to the effect that probable cause to arrest the petitioner was lacking at the time of the search to support its position that the search was justified as a protective pat frisk.[1] The judge who decided the petitioner's motion to suppress agreed with the Commonwealth that probable cause to arrest the petitioner was lacking at the time of the search, but that the search could be upheld as a protective pat frisk.

Probable cause to arrest only became a live issue in this case when the state Appeals Court permitted the Commonwealth on the petitioner's direct appeal to abandon its theory that the search was a proper pat frisk and to argue for the first time that probable cause to arrest the petitioner did exist when he was searched, in direct contradiction of the Commonwealth's theory in the trial court and the testimony of its own police officers. The state Appeals Court agreed that the invasive search of the petitioner could not be justified as a protective pat frisk, and adopted the Commonwealth's new theory that there was nonetheless sufficient probable cause to arrest him at the time of the search. In finding probable cause to arrest, the Appeals Court relied in part upon evidence that no other potential assailants were seen in or near the area where the

---

[1]The petitioner was formally placed under arrest about six hours after the invasive search, when the police found physical evidence, including a gun believed to be the murder weapon, which they believed connected him to the shooting.

2

petitioner and victim were found.[2]

The question of probable cause to arrest the petitioner thus was decided on his direct appeal based upon a trial court record made when the Commonwealth was conceding a lack of probable cause to arrest.[3] Following denial of his direct appeal, the petitioner moved for a new trial in the state court. The crux of petitioner's motion for a new trial was his claim that, once the Commonwealth was permitted to reverse its position on the question of probable cause to arrest him on his direct appeal, it had a constitutional duty to disclose exculpatory evidence relevant to that question. The petitioner accompanied his motion for a new trial with a motion for discovery of the documents he is seeking herein.

Massachusetts law requires that a party establish a prima facie case for relief in order to obtain discovery in connection with a motion for a new trial. Mass. Rules of Criminal Procedure, Rule 30 (c)(4). Therefore, before filing his motions for a new trial and for discovery, the petitioner sought documents from the Commonwealth relating to the possible apprehension of other suspects for the homicide at the very moment the Commonwealth belatedly claimed probable cause existed to arrest the petitioner for the same homicide. The petitioner also searched public records such as newspaper archives and court records. The petitioner obtained sufficient information to support his motions with allegations never considered on his direct

---

[2] Both the Commonwealth and the Appeals Court made much of the fact that a witness found the petitioner holding the victim seconds after the witness heard a gun shot. The petitioner's presence on the scene so soon after the gun shot was explained by the fact that he worked in an office located directly adjacent to the stairwell where the victim, who was the petitioner's employment supervisor, was shot. The witness, who was also an employee, was outside and some distance away from the building when he heard the shot.

[3] Under the Massachusetts Rules of Appellate Procedure, the petitioner had no opportunity on his appeal either to request any discovery or to expand the trial court record on appeal with any information he might be able to discover on his own.

3

appeal -- namely that, at the very moment the Commonwealth (belatedly) claimed probable cause to arrest him existed, the state police were engaged in a massive manhunt for three men they believed could be the assailants, used deadly force against these suspects, apprehended them under suspicion for the very same homicide for which the petitioner was purportedly contemporaneously arrested, and later justified using deadly force against the men, and shooting one of them, by stating that they reasonably believed that the suspects were involved in the homicide.[4]

The petitioner has never claimed complete ignorance of the possibility that other suspects were being pursued at the same time he was being interviewed and searched by the police. At the hearing on his motion to suppress in the trial court, there was passing mention by a number of police officers of "another incident" taking place on the other end of town at the same time as the investigation into the shooting at the petitioner's place of employment. One officer testified that at one point he thought the persons being chased at the other end of town could be the assailants. But the petitioner had absolutely no reason to inquire about this testimony, because the Commonwealth had already conceded a lack of probable cause to arrest him. In fact, the prosecutor used the testimony about the other possible suspects in his summation at the suppression hearing to support the Commonwealth's theory that the petitioner was *not* under arrest when he was searched.[5] Information about the simultaneous apprehension of other

---

[4]There was no connection whatsoever between the petitioner, who was at the scene of the shooting because he worked there, and the three men seen abandoning a stolen car, who were pursued by the police into a wooded area on the other side of town. The shooting occurred very early in the morning, before many people were at work, in a large building with front and back entrances and stairwells, making it perfectly possible that the shooter or shooters had made their escape from the scene without being seen.

[5]Were it not for the fact that the prosecutor told the suppression motion judge that "we're arguing of course that John Lindenberg was not in custody. . . was not under arrest. . . he [was] a

4

suspects only became material evidence when the question of probable cause to arrest the petitioner became a live issue in the state Appeals Court.

The rule of *Stone v. Powell,* 428 U.S. 465 (1976), that a federal habeas court cannot revisit a state court's disposition of a Fourth Amendment claim does not apply where a "petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." *Sanna v. DiPaolo,* 265 F.3d 1, 11 (1st Cir. 2001). That is the case here. Petitioner's claim that probable cause to arrest him was lacking was not litigated in the trial court, because the Commonwealth immediately agreed with his position. When the Commonwealth was permitted to reverse its position in the appellate court, the petitioner was compelled to defend his position based upon the inadequate evidentiary record made at a suppression hearing where probable cause to arrest was not an issue. He did not receive "full and fair consideration of his claim." *Herrera v. LeMaster,* 225 F.3d 1176, 1178 (10th Cir. 2000) (full and fair consideration of claim denied where state appellate court failed to apply *Chapman* standard in assessing harmlessness of Fourth Amendment violation it found).

A federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing when there is a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing. Appropriate discovery should be permitted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is. . . . entitled to relief." *Bracy v. Gramley,* 520 U.S. 899, 908 (1997), quoting from *Harris v. Nelson,*

---

witness," transcript of suppression hearing at Vol. II: 72, 75, 79, the petitioner could be said to have been fairly on notice that probable cause to arrest him was a live issue. But in view of the prosecutor's express agreement that there was no probable cause to arrest the petitioner at the time of the offending search, probable cause to arrest was not a live issue and defense counsel had no reason to demand information about the pursuit of other possible assailants which would have no value to the defense, other than to support a probable cause challenge made unnecessary by the Commonwealth's concession.

394 U.S. 286, 291 (1969).

The apprehension of other suspects for the same homicide contemporaneously with the de facto arrest of the petitioner is relevant to the question of probable cause to arrest him. *See, Commonwealth v. Storey,* 378 Mass. 312, 321 (1979) (probable cause satisfied in part because of absence of evidence of other suspects). Information that three other men were being taken into custody by deadly force under suspicion for the same homicide at the very moment the petitioner was being de facto arrested would greatly assist the petitioner in establishing a lack of probable cause for his arrest, because the petitioner and the three other men could not all be considered potential suspects. If other suspects were indeed being simultaneously apprehended for the same homicide, this becomes a case where "the limiting factor of likeliness is discarded and the standard becomes one of possibility rather than probability." *Commonwealth v. Jackson,* 459 Pa. 669, 675 n. 4 (1975). In fact, the Commonwealth relied upon the testimony of one officer that other suspects were being pursued to support its original position in the trial court that there was no probable cause to arrest the petitioner.[6]

Several U.S. Supreme Court decisions have been described as precedent for the view that probable cause to arrest does not exist unless the information at hand singles out one individual. *See,* LaFave, Search and Seizure, §3.2(e). In *Johnson v. United States,* 333 U.S. 10 (1948), the U.S. Supreme Court held that entry into a hotel room after police standing outside smelled burning opium could not be justified as a step toward a lawful arrest, because the police could not know whether there was one or several persons in the room until they entered the room, thereby suggesting that the police could not lawfully arrest every person found in the room. As the Supreme Court later explained in *Mallory v. United States,* 354 U.S. 449, 456 (1957), in

---

[6]Having reversed its position on appeal and adopted the argument that there was probable cause to arrest petitioner when he was strip searched, the Commonwealth then argued that the pursuit of other suspects was irrelevant to the probable cause determination.

6

regard to the requirement of probable cause to arrest:

> It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on "probable cause."

The Supreme Court reiterated the point that probable cause to arrest can arise only when the police have narrowed their focus to a particular suspect (or related group of suspects) in *Wong Sun v. United States,* 371 U.S. 471, 481 (1963), where the court found no probable cause to support the defendant's arrest, because the police had no information which narrowed the scope of their investigation to the defendant as distinguished from other proprietors of a Chinese laundry on a particular street with the surname "Toy."

The Second Circuit also reads *Wong Sun v. United States* and *Johnson v. United States* as precedent for the view that probable cause to arrest cannot exist when the information in the hands of the police does not reasonably single out the defendant from a group of potential suspects. In *United States v. Fisher,* 702 F.2d 372, 375, 378 (2d Cir. 1983), the court found a lack of probable cause to arrest the defendant, stating that even if the defendant was one of four people on a porch and it was known that three bank robbers were on the porch, there could be no legitimate inference that the defendant was one of the robbers, citing *Johnson v. United States, supra. Id.* at 378.

Courts find a lack of probable cause to arrest where the general nature of the description of a suspect results in the arrest of multiple unconnected suspects for the same crime. In *Commonwealth v. Jackson, supra,* an officer arrested five youth within a one-block area who met the description of two youth wanted for a robbery homicide. The court held that the arrests were not supported by probable cause, reasoning that "[i]f a description is so general that a great many people can be arrested on the basis of it alone, the limiting factor of likeliness is discarded and the standard becomes one of possibility rather than probability." *Id,* 459 Pa. at 675 n. 4.

7

*Commonwealth v. Jackson* was cited with approval in *Commonwealth v. Carrington,* 20 Mass. App. Ct. 525, 528 (1985), where the court agreed that probable cause to arrest cannot rest on a "description equally applicable to a large number of people."

In this case, there was no connection whatsoever between the petitioner, who was at the scene of the shooting because he worked there, and the three men seen abandoning a stolen car a mile or two from the scene. It was not until many hours after the invasive search of the petitioner, found to constitute a de facto arrest, and the apprehension of the three men on the other end of town that the police had information at hand which singled out the petitioner as the person whom they should charge.

The petitioner's request for leave to take discovery should be granted in order that he may have a full and fair opportunity to make his case for a lack of probable cause to arrest him. He was denied that opportunity in the state courts, where he was compelled to meet the Commonwealth's belated claim that probable cause to arrest him did exist without the benefit of discovery of evidence in prosecution and police files regarding the apprehension of other suspects -- evidence which became important only when the Commonwealth's change of position on appeal made the issue of probable cause to arrest the petitioner a live issue. The absence of evidence in the record about the circumstances surrounding the apprehension of the other suspects enabled the state appellate court to find probable cause to arrest the petitioner, in part based on a lack of evidence that other potential assailants were seen near the area of the shooting.

Discovery should be allowed where the information sought is in the exclusive possession of the government and the information will enable the petitioner to test the validity of factual representations made by the government. *See, Gaitan-Campanioni v. Thornburgh,* 777 F.Supp. 1355, 1360 (D.C. Tx., 1991) (discovery granted of information which will enable petitioners to

test validity of general observations made in affidavit of government official).  The prosecutor made factual representations in the state courts regarding the apprehension of the other suspects which the petitioner was unable to rebut, because he was denied access to the relevant records in the exclusive custody of the prosecution and the police.[7] In opposition to petitioner's motion for a new trial and for discovery, the prosecutor argued that the petitioner had produced "no evidence" to buttress his claim that, at the very moment the prosecution belatedly claimed probable cause existed to arrest him, other police officers were apprehending with deadly force three other suspects on the other side of town for the very same homicide. The prosecutor claimed that the record shows that the other subjects were "suspected of stealing a car" and were arrested and charged with offenses related to this auto theft.[8]  *See*, pp. 14-16 from Commonwealth's Opposition to Defendant's Second Motion For a New Trial, attached as Exhibit 1, and p. 18 from the Brief for the Commonwealth, attached as Exhibit 2.

The petitioner was required to rebut the prosecutor's assertions with newspaper articles, because both the prosecution and the state police have refused the petitioner any access to their records regarding the apprehension of the other suspects.[9] One newspaper story, published the

---

[7] The only records produced by the Commonwealth were tapes of the police radio broadcast during the pursuit of the three other subjects, along with a page from a state police administrative log.

[8] The Commonwealth argued in the state courts that the other suspects were arrested for offenses related to auto theft, not murder, and that the discovery the petitioner is seeking would therefore be fruitless. The Commonwealth supported this claim by reference to the charges ultimately filed against the suspects at their arraignment on the following day. The state police and the office of the District Attorney have refused to disclose any documents which would reveal what the men were suspected of when they were first taken into custody. It is not uncommon for the police to charge suspects with lesser crimes while they investigate them for the more serious crimes they suspect them of.

[9] The state police did produce tapes of their radio broadcasts regarding the pursuit of the three other men which established that all of the officers involved in the pursuit of the three men were advised that the subjects were possibly involved in a homicide, and that the three subjects were apprehended with deadly force and one of them was shot. The transcript of the radio

day of the shooting, related that a state employee had been killed in a shooting that morning, and that "a possible suspect was shot during a manhunt a few hours later" in a wooded area. The story stated that "two other suspects were arrested at 10:04 a.m" at gunpoint in the same location. This is precisely the time the prosecution belatedly claimed that there was probable cause to arrest the petitioner. A newspaper article the following day reported a statement by a police official that, at the time of the apprehension of the three suspects and the wounding of one of them, the officers pursuing them reasonably believed that they were involved in the homicide.

    A federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing when there is a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief, and the state has not afforded the petitioner a full and fair evidentiary hearing. In this case, there has never been *any* evidentiary hearing on the question of probable cause to arrest the petitioner. If, rather than waiting until the petitioner's appeal, the Commonwealth had taken the position at the hearing on the petitioner's motion to suppress that probable cause to arrest him existed at the time of the search, the petitioner would have had the opportunity to demand full disclosure of the circumstances surrounding the apprehension of other suspects in order to meet the Commonwealth's argument, even assuming *arguendo* that the Commonwealth had no constitutional duty to make disclosure. Appropriate discovery should be permitted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is. . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908 (1997), quoting from *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

    The petitioner has shown by specific allegations that he may, if the facts regarding the pursuit and apprehension of the other suspects are fully developed, be able to demonstrate that

---

broadcast also established that the three other suspects were taken into custody at the very moment the Commonwealth belatedly claimed that probable cause to arrest the petitioner for the homicide existed.

10

probable cause to arrest him was lacking and that all of the physical evidence and statements resulting from the unlawful search and seizure should have been suppressed. Statements made by the petitioner and physical evidence seized from him after his illegal de facto arrest, as well as physical evidence seized pursuant to a search warrant obtained in reliance upon the illegally obtained statements and physical evidence, were introduced against the petitioner at trial. The critical issue at trial in this case was whether the petitioner shot the victim with a specific intent to kill or as a result of sudden combat or as an act of self-defense, which could either justify the shooting or permit a finding of voluntary manslaugher. The jury's assessment of the petitioner's credibility was critical. What was especially damaging to the petitioner at trial -- and of paramount importance to the prosecution -- was the unlawfully admitted evidence of the petitioner's demeanor and persistent denials of his involvement in the shooting to state troopers over the course of the six hour interrogation which followed the illegal search and seizure.

In addition, although the Commonwealth conceded on appeal and the state Appeals Court assumed in its opinion that the petitioner, who is profoundly deaf, was denied his right under a state statute, M.G.L. c. 221, §92A , to an interpreter, the Appeals Court concluded that, notwithstanding this grave error, a new trial was not warranted. Essential to the Appeals Court's holding that this deprivation alone did not warrant a new trial was its erroneous conclusion that the police had probable cause to arrest the petitioner at the time he was strip searched by the state police during the custodial interview. This erroneous finding permitted the Appeals Court to buttress the potency of the case against the petitioner with unlawfully obtained physical evidence and statements. The Court then concluded that the statutory violation was not sufficiently prejudicial to require the reversal of the petitioner's conviction.

11

## CONCLUSION

Petitioner's motion for leave to take discovery pursuant to Rule 34 of the Rules of Civil Procedure should be allowed.

Respectfully submitted,

Date: May 12, 2004

By: *[signature]*
John P. Fulginiti, Esq.
BBO #554709
Taylor, Ganson & Perrin, L.L.P.
160 Federal Street, 20th Floor
Boston, MA 02110
(617) 951-2777