UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 03-40267-DPW

|  |  |
|---|---|
| JOHN G. LINDENBERG,<br>   Petitioner<br><br> v.<br><br>PAUL VERDINI, Superintendent,<br>MCI, Shirley,<br>   Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF JOHN P. FULGINITI IN SUPPORT OF PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY

JOHN P. FULGINITI hereby deposes and states:

1. I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts and am representing the Petitioner, John G. Lindenberg, in this habeas corpus proceeding.

2. I am a partner of the law firm Taylor, Ganson & Perrin, LLP, which was retained in 1994 to prosecute John Lindenberg's appeal from his conviction. As appellate counsel for Mr. Lindenberg, I have personal knowledge of the facts and circumstances stated herein relating to his direct appeal from his conviction, as well as his motions for a new trial and for discovery. I learned the remainder of the information discussed below from records maintained by the Worcester Superior Court, the Westborough District Court and the Massachusetts State Police, as well as from stories which appeared in local newspapers and from other named sources.

3. Prior to his trial, the Petitioner moved to suppress statements and physical evidence recovered by the State Police in violation of his rights to be free from unreasonable searches and seizure under the U.S. Constitution and the Massachusetts Declaration of Rights. The gist of the Petitioner's claim was that state troopers forced him to strip down to his underwear and to submit to a search of his clothing and a frisk of his underwear, without any suspicion that the Petitioner was either armed or a participant in the homicide being investigated, and that this invasive search transformed the informal questioning of him into a de facto arrest and custodial interrogation. At the hearing on the Petitioner's motion to suppress, the Commonwealth immediately conceded that probable cause to arrest the Petitioner was lacking at the time of the search, and successfully defended the search as a protective pat frisk. The Commonwealth's position at the suppression hearing was that probable cause to arrest the Petitioner did not arise until more than 6 hours after the search, when the police found physical evidence, including a gun, which they believed could be linked to the Petitioner. The Commonwealth's concession eliminated the issue of probable cause to arrest the Petitioner at the time of the strip search as a live issue in the trial court proceeding.

4. At the hearing on the Petitioner's motion to suppress, a number of police officers testified that, contemporaneously with the homicide investigation at the Petitioner's place of employment, "another matter" involving a stolen car was going on at the other end of town. One officer testified that information he heard over his police radio the morning of the homicide led him to believe that three people being pursued at the other end of town, who had fled from a stolen car found about a mile and a half or two miles from the homicide scene, could be the assailants involved in the homicide. The Petitioner had no reason to pursue information about this other contemporaneous matter, so long as the Commonwealth agreed that probable cause to arrest the Petitioner was lacking when he was searched.

5. I was taken by surprise when the Commonwealth did an about-face on the Petitioner's appeal and for the first time argued that the police had probable cause to arrest him for murder at the time of the strip search. Under the Massachusetts Rules of Appellate Procedure, the Petitioner had no entitlement in the Appeals Court either to request discovery or to expand the evidentiary record made in the trial court. I was compelled to meet the Commonwealth's new theory with the record made at the suppression hearing where the Commonwealth had conceded a lack of probable cause to arrest.

6. Following the affirmance of the Petitioner's conviction, by letters dated May 14 and 17, 1999, Taylor, Ganson & Perrin made formal requests pursuant to the Massachusetts public records statutes, M.G.L. c. 4, §7, and M.G.L. c. 66, §10, of the Westborough Police Department and of the Massachusetts State Police, including the Worcester C-PAC unit assigned to the District Attorney's Office, for all records and reports relating to the police chase of a stolen motor vehicle on the morning of the homicide, as well as police arrest reports, duty logs, and recordings of police radio broadcasts on that morning.

7. By a letter dated July 9, 1999, the State Police produced tapes of the police radio transmissions covering the relevant time period. From the transcript prepared from those tapes, I learned for the first time that all of the officers involved in the pursuit of the three subjects were advised that the subjects were possibly involved in the homicide and that it was a good possibility they were armed, because the weapon had not yet been recovered at the homicide scene. I also learned that the three subjects were apprehended with deadly force and one of them was shot. The transcript of the radio broadcast also established that the three suspects were taken into custody at the very moment the Commonwealth belatedly claimed that probable cause to arrest the Petitioner for the homicide existed.

8. With this information, we made a supplemental request for all incident and police reports regarding the apprehension and arrest of the three subjects, as well as regarding the shooting of one suspect. We received no documents in response to our request.

9. Articles retrieved from the archives of the Middlesex News and Worcester Telegram and Gazette reported that the Massachusetts State Police initially disclosed to the media that the three suspects were apprehended in connection with the homicide. A state official reportedly stated that it was only at the conclusion of the police's day-long investigation, when they discovered certain physical evidence, that the Petitioner was arrested and the three suspects already under arrest were cleared. Capt. Wayne Harding, commander of the western division of the Massachusetts State Police and the superior of all of the troopers involved in the homicide investigation, was quoted at a press conference on February 16, 1990 as justifying the shooting of one of the suspects on the ground that the police reasonably believed that the suspects were involved in the shooting at the Fisheries and Wildlife Department.

10. The Petitioner has never claimed that the above-described information was not available to him while his case was pending in the trial court. The Petitioner does claim that the state courts denied him a full and fair hearing on his Fourth Amendment claim, because he had no reason to seek information about the apprehension of the other suspects until the Commonwealth was permitted to change its position on probable cause to arrest in the Appeals Court, by which time the Petitioner had lost his right to seek discovery from the Commonwealth or to expand the record made in the trial court. Further, the Petitioner claims that, once the Commonwealth was permitted to argue in the Appeals Court that probable cause to arrest him did exist at the time he was searched, information regarding the contemporaneous apprehension of other suspects became exculpatory evidence which the prosecution had a duty to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963).

Sworn under the pains and penalties of perjury this 12th day of May 2004.

Date: May 12, 2004

Respectfully submitted,

By: /s/ John P. Fulginiti
John P. Fulginiti, Esq.
BBO #554709
Taylor, Ganson & Perrin, L.L.P.
160 Federal Street, 20th Floor
Boston, MA 02110
(617) 951-2777